**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **WHITE AVIATION LLC,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO.** |
| | ) | |
| **U.S. SPECIALTY INSURANCE** | ) | **JURY DEMAND** |
| **COMPANY, a foreign corporation,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

## COMPLAINT

COMES NOW THE PLAINTIFF and hereby files this Complaint for Damages by stating as follows:

## JURISDICTION

1. The jurisdiction of this court is invoked pursuant to 28 U.S.C. §1332(a).

2. Plaintiff's Complaint is an action for damages for benefits due under a policy of insurance for property damage and other injuries suffered by Plaintiff resulting from an insurance claim to replace engines on and otherwise repair an aircraft owned by the Plaintiff. The amount in controversy exceeds the jurisdictional minimum of this Court.

3. Plaintiff, White Aviation LLC, ("Plaintiff") is an Alabama Limited Liability Company with its primary place of business located in Houston County, in the State of Alabama.

1

4.      Defendant, U.S. Specialty Insurance Company ("Defendant") is a foreign corporation, properly licensed and qualified to do business in the State of Alabama, that is itself doing business, for itself and through its agents, in Houston County, Alabama. Therefore, venue in the Middle District of Alabama is proper pursuant to 28 U.S.C. §1391.

5.      Prior to September 21, 2022, Plaintiff purchased a policy of insurance from the Defendant covering losses that might occur to a certain 1981 Beech 200 aircraft (hereinafter "aircraft"). This policy of insurance, with policy number AC3023976-00, provided coverage for a variety of potential losses. Thereafter Plaintiff paid premiums to Defendant as called for in the contract of insurance.

6.      On June 13, 2023, and during the policy period for the above policy of insurance, there was a front gear failure which caused substantial damage to the aircraft during landing. Plaintiff took all necessary steps to mitigate the damage and immediately notified the Defendant of the front gear failure and damage to the aircraft.

7.      Thereafter, Plaintiff worked with Defendant to determine the scope of the damage and mitigate ongoing damage to the aircraft. On the advice of Defendant, Plaintiff secured the services of James F. Irvin with AERS LLC to inspect the aircraft. Plaintiff coordinated its efforts to mitigate the damages with Defendant's adjuster assigned to Plaintiff's claim.

8.      Plaintiff worked with Defendant to determine the scope of the damage and determine the best and most cost-effective way to repair the damage to the aircraft caused by the incident.  Defendant agreed with Plaintiff that the propellers and engines for

Plaintiff's aircraft had to be replaced due to damage incurred in the landing gear failure of June 13, 2023. On November 1, 2023 Defendant's adjuster approved the purchase of two engines from a company called Prime Turbines for a total purchase price of $850,000.00. Based on this approval Plaintiff purchased these replacement engines for $850,000.00. Defendant paid $200,000.00 to Plaintiff as the deposit required to purchase these engines and Plaintiff paid this amount to Air King. Plaintiff contracted with Air King/DV Aviation, LLC ("Air King") to repair and replace the parts of the aircraft that were damaged beyond repair by the incident and to replace the damaged engines with the replacement engines. Plaintiff coordinated its efforts to repair the damages with Defendant's adjuster assigned to Plaintiff's claim.

9.      Plaintiff submitted information, estimates, and invoices on the damages, mitigation, repairs and work performed to the insured aircraft to the Defendant in a timely fashion. On December 8, 2023, Plaintiff received an estimate for repairs by Air King in the amount of $439,550.00 and a request for a deposit payment of $350,000.00. Plaintiff forwarded this request to Defendant's adjuster on the same day.  All the repairs planned by Air King were associated with damage caused by the landing incident on June 13, 2023 and the repair of same.

10. The Defendant approved the repairs set out in the estimate from Air King and Plaintiff instructed Air King to proceed with repairing the aircraft and installing the replacement engines.

11.     On September 9, 2025, Defendant mailed a check to Plaintiff in the amount of $267,987.87 stating that this was payment of the remaining amounts owed by Defendant to Plaintiff for this claim. The check was mailed without any detailed analysis or calculations as to why the Defendant refused to pay the full cost of the repairs to the property.

12.     By October of 2024, all repairs to the aircraft had been completed. Plaintiff received a final invoice from Air King Aviation showing the total cost to complete the repairs to the aircraft related to the incident were $91,343.15. During the repairs to Plaintiff's aircraft, Defendant paid Plaintiff some amounts under its policy but refused to pay the funds needed to pay for all the repairs as they were completed. Plaintiff incurred expenses including interest and financing charges to complete the work covered by the policy of insurance with Defendant.

13. Due to Defendant's refusal to pay for repairs once they were completed Plaintiff was unable to pay for the repairs. As a result of Defendant's non-payment Air King Aviation Services, Inc. placed a lien on Plaintiff's aircraft and has refused to release Plaintiff's logbooks, which prevents Plaintiff from using the aircraft. Furthermore, Air King Aviation Services, Inc. has initiated litigation against the Plaintiff in Texas to collect amounts it claims are owed for repairs.

14.     Defendant has refused to pay the cost of the repairs of the damages to the aircraft and conveyed this position through its adjuster.  Defendant has stated to Plaintiff that it believes the used replacement engines which cost $850,000.00 somehow

added value to Plaintiff's damaged aircraft and therefore Defendant considered this to be a "betterment" of Plaintiff's aircraft. The Defendant stated to Plaintiff that it was deducting the amount of $436,431.57 from what it would pay Plaintiff for the replacement engines and would not pay for the full actual cost of the engines. This was after Defendant agreed that $850,000.00 was the actual cost of engines. This use of "betterment" is not supported by any portion of the contact of insurance issued to Plaintiff.

15.    The Defendant refused to pay the full cost of the replacement engines and the final repair invoice from Air King even though the policy language required Defendant to do so. The policy issued to Plaintiff by Defendant contained the following clause:

> b. Damaged Aircraft
> If your aircraft is damaged and not destroyed, we will pay the reasonable cost of repair after the aircraft is repaired, but we will not pay more than the agreed value less the applicable deductible.

16.    This Honorable Court has both subject matter jurisdiction over all of the claims presented herein and personal jurisdiction over the parties hereto. Suit over the claims present is therefore proper and lawful in this honorable Court.

## COUNT ONE-BREACH OF CONTRACT

17.    Plaintiff hereby adopts and reavers all the above allegations, as if fully set out herein in full.

18.     Prior to the damage June 13, 2023, the Plaintiff bought, maintained and had in effect an insurance policy, by and through the Defendant identified as Policy Number AC3023976-00, ("the Policy")

19.     As part of the obligations of the Defendant under the policy, the Defendant was liable for any and all damage caused by the incident on June 13, 2023 including all costs incurred to repair damage to the aircraft and for costs associated with transporting the aircraft to facilitate repairs. The policy provided that Defendant would pay up to $1,750,000.00 for any damages to the aircraft.

20.     Around and during the incident on June 13, 2023, the Plaintiff suffered severe damage to the insured aircraft during a landing.

21.     The Defendant recognized the damages suffered by the Plaintiff and paid for some of the damages under the insurance policy purchased by Plaintiff.

22.     The Defendant refused to cover all the damages suffered by the Plaintiff, even though such damages were caused by the incident and were considered a covered loss under the policy.

23.     As a result of the Defendant's Breach of the insurance contract, the Plaintiff has been damaged.

WHEREFORE ALL PREMISES CONSIDERED, Plaintiff hereby DEMANDS JUDGMENT against the Defendant for any and all damages as necessary to compensate it for the losses that it sustained.  Plaintiff further demands costs, attorney's fees, interest,

and any and all other damages as allowed by law, in an amount to be determined by the trier of fact.

## COUNT TWO-BAD FAITH

24.    Plaintiff hereby adopts and reavers all of the above allegations, as if fully set out herein.

25.    Prior to the damage caused by the incident on June 13, 2023, the Plaintiff bought, maintained and had in effect an insurance policy, by and through the Defendant identified as Policy Number AC3023976-00.

26.    As part of the obligations of the Defendant under the specific insurance policy purchased by Plaintiff, the Defendant was liable for the cost to repair any damage to Plaintiff's aircraft caused by the incident, including all costs incurred to repair damages to the aircraft and for costs associated with transporting the aircraft to facilitate repairs.

27.    The Defendant recognized the damages suffered by the Plaintiff and thereafter Defendant paid for some of the damages suffered by the Plaintiff.

28.    Defendant refused to cover all the damages suffered by the Plaintiff, even though such damages were covered by the policy of insurance purchased by Plaintiff. At the time of the refusal, Defendant lacked any reasonably legitimate, arguable, or debatable reason to deny or underpay the claim.

29.    In their handling of the specific insurance policies in question, the Defendant, in bad-faith, failed to handle the claims in a competent and appropriate manner, failed to notify the Plaintiff of their decisions in a timely manner, failed to

communicate with the Plaintiff in a timely manner, and unilaterally decided that they would not be responsible for the full cost to repair the aircraft after instructing the Plaintiff to proceed with the repairs. This refusal to pay the full cost of repair was based on nothing more than the Defendant's desire to pay less than was owed. Defendant has exhibited complete and utter disregard for the obligations they owed the Plaintiff.

30.     As a result of their misconduct the Defendant is liable to Plaintiff for their actions amounting to bad-faith.

31.     As a result of the Defendant's misconduct the Plaintiff has suffered substantial damage including the cost to repair the aircraft, the loss of use of the aircraft due to the lien placed on it and the inability to obtain the logbooks, along with other damages.

WHEREFORE ALL PREMISES CONSIDERED, Plaintiff hereby DEMANDS JUDGMENT against the Defendant for any and all compensatory damages as necessary to compensate it for the losses that it sustained.  Plaintiff further demands costs, interest, and any and all other damages as allowed by law, in an amount to be determined by the trier of fact.   Plaintiff further demands punitive damages of the Defendant to punish it for its misconduct and to stop other such misconduct from occurring in the future.

### COUNT THREE-ABNORMAL BAD FAITH

32.     Plaintiff hereby adopts and reavers all the above allegations, as if fully set-out herein.

8

33. Prior to the damage caused by the incident on June 13, 2023, the Plaintiff bought, maintained and had in effect an insurance policy, by and through the Defendant identified as Policy Number AC3023976-00.

34. As part of the obligations of the Defendant under the specific insurance policy purchased by Plaintiff, the Defendant was liable for the cost to repair any damage to Plaintiff's aircraft caused by the incident, including all costs incurred to repair damages to the aircraft and for costs associated with transporting the aircraft to facilitate repairs.

35. The Defendant recognized the damages suffered by the Plaintiff and thereafter Defendant paid for some of the damages suffered by the Plaintiff.

36. Defendant refused to cover all the damages suffered by the Plaintiff, even though such damages were covered by the policy of insurance purchased by Plaintiff. At the time of the refusal, Defendant lacked any reasonably legitimate, arguable, or debatable reason to deny or underpay the claim. Defendant failed or refused to properly investigate Plaintiff's claim or subject this claim to any cognitive evaluation where it considered the contract language of the policy. Defendant's creation of and use of "betterment" as an excuse not to pay $436,431.57 of this claim would have been avoided if Defendant had reviewed it policy language and seen that there is no contractual language allowing the denial of payment of covered losses for "betterment."

37. In their handling of the specific insurance policy in question, the Defendant, in bad-faith, failed to handle the claims in a competent and appropriate manner, failed to notify the Plaintiff of their decisions in a timely manner, failed to communicate with the

Plaintiff in a timely manner, and unilaterally decided that they would not be responsible for the full cost to remediate and repair the aircraft after instructing the Plaintiff to proceed with the repairs. This refusal to pay the full cost of remediation and repair was based on nothing more than the Defendant's desire to pay less that was owed. Defendant created a false reason not to honor the terms of the contract of insurance and failed to review the polity of insurance to see that "betterment" is not a legitimate basis to deny payment of any portion of a claim. Defendant has exhibited a complete and utter disregard for the obligations they owed the Plaintiff.

38.     As a result of their misconduct the Defendant is liable to Plaintiff for their actions amounting to abnormal bad-faith.

39.     As a result of the Defendant's misconduct the Plaintiff has suffered substantial damage including the cost to repair the aircraft, the loss of use of the aircraft due to the lien placed on it and the inability to obtain the logbooks, along with other damages.

WHEREFORE ALL PREMISES CONSIDERED, Plaintiff hereby DEMANDS JUDGMENT against the Defendant for any and all compensatory damages as necessary to compensate it for the losses that it sustained.  Plaintiff further demands costs, interest, and any and all other damages as allowed by law, in an amount to be determined by the trier of fact.   Plaintiff further demands punitive damages of the Defendant to punish it for its misconduct and to stop other such misconduct from occurring in the future.

DATED this 17th day of July, 2026.

/s/ Harry P. Hall, II
Harry P. Hall, II (ASB-1371-L71H)
*Attorney for Plaintiff*

OF COUNSEL:
FARMERPRICE LLP
100 Adris Place
Dothan, Alabama 36303
(334) 793-2424 Telephone
(334) 793-6624 Facsimile
harry@farmerprice.com

/s/ H. Warren Cobb, Jr.
H.  Warren Cobb, Jr. (ASB-9444-R81C)
*Attorney for Plaintiff*

OF COUNSEL:
Boyd & Cobb
Attorneys at Law
112 Jamestown Blvd
Dothan, AL 36301
334-677-1000
334-699-3500 (fax)
Warren@cobbfirm.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

s/Harry P. Hall, II
Of Counsel

**SERVE DEFENDANT AT:**
U.S. Specialty Insurance Company
c/o National Registered Agents Inc.
2 North Jackson Street, Suite 605
Montgomery, AL 36104